IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JOHN OLSON, | : | |
| Petitioner | : | No. 1:24-cv-01160 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| J. SAGE (Warden), | : | |
| Respondent | : | |

**MEMORANDUM**

Currently before the Court is pro se Petitioner Matthew John Olson ("Olson")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that the BOP has failed to credit him with time served in state correctional facilities towards his federal sentence.  For the reasons stated below, the Court will dismiss the petition.

I.      BACKGROUND

Olson has an extensive criminal history, mostly felony convictions involving possessing controlled substances, possessing controlled substances with intent to deliver or manufacture, or delivering controlled substances, from the State of North Dakota.  See, e.g., State v. Olson, No. 18-05-K-03159 (N.D. Dist. Ct. Grand Forks Cnty. filed Sept. 19, 2005) (convicted of possessing methamphetamines with intent to deliver and sentenced to ninety days of county incarceration); State v. Olson, No. 18-05-K-03251 (N.D. Dist. Ct. Grand Forks Cnty. filed Sept. 27, 2005) (convicted of possessing cocaine with intent to deliver and originally sentenced to probation; however, his sentence was revoked on October 18, 2006, and he was resentenced to 60 months' state incarceration with all but twenty of those months suspended for three years); State v. Olson, No. 18-08-K-01941 (N.D. Dist. Ct. Grand Forks Cnty. filed Sept. 19, 2008) (convicted of possessing methamphetamines and marijuana with intent to deliver and sentenced to five years' state incarceration on January 13, 2009); State v. Olson, No. 18-08-K-02287 (N.D. Dist. Ct.

Grand Forks Cnty. filed Nov. 6, 2008) (convicted of possessing marijuana with intent to deliver or manufacture and possessing cocaine and sentenced to concurrent term of five years' state incarceration on January 13, 2009); State v. Olson, No. 18-08-K-02315 (N.D. Dist. Ct. Grand Forks Cnty. filed Nov. 12, 2008) (convicted of two counts of possessing altered property and sentenced to six months' confinement on January 13, 2009); State v. Olson, No. 09-09-K-00193 (N.D. Dist. Ct. Cass Cnty. filed Jan. 20, 2009) (convicted of delivering methamphetamines and sentenced to six years and six months' confinement on April 23, 2009, with this sentence to run concurrently with his Grand Forks County sentences).[1] As far as the Court can discern, these convictions resulted in Olson spending most of his time from 2005 until 2014 in North Dakota county and state prisons.

On or about August 14, 2014, state authorities in North Dakota arrested Olson for multiple felony drug offenses. See State v. Olson, No. 18-2014-CR-01652 (N.D. Dist. Ct. Grand Forks Cnty. filed Aug. 14, 2014). It appears that North Dakota officials dismissed those charges on June 8, 2015, due to a federal criminal indictment that the Court will discuss below. See id.

Along with the later-dismissed drug charges filed against him in August 2014, Olson's parole was revoked in North Dakota on September 8, 2014, and he remained incarcerated in North Dakota correctional facilities until he was paroled on August 6, 2015. See (Doc. No. 9-15 at 2). North Dakota officials also credited Olson's state parole revocation sentence for time he

---

[1] The Court takes judicial notice of the dockets in Olson's underlying state and federal criminal cases. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). The Court reviewed Olson's North Dakota criminal history on the State of North Dakota Courts' Public Case Search Database (https://www.ndcourts.gov/public-access).

2

spent in custody from August 13, 2014, until September 10, 2014, covering the period from his initial arrest until his parole revocation.  See (id.); see also (Doc. No. 9-2 ¶ 14).

On March 18, 2015, a grand jury in the United States District Court for the District of North Dakota returned an indictment charging Olson with one count of conspiracy to possess with intent to distribute and distribute a controlled substance (21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846), based on conduct occurring between January 1, 2013 and the date of the indictment.  See United States v. Olson, No. 15-cr-00029-03 (D.N.D.) ("Olson"), ECF No. 2.  To address these federal charges, the United States Marshals Service ("USMS") arrested Olson once he was paroled by North Dakota officials on August 6, 2015.  See (Doc. No. 9-2 ¶ 10; 9-10 at 2–4).  Olson remained in USMS custody from August 6, 2015 until January 23, 2017, when he was sentenced to one hundred and eighty-six months' imprisonment to be followed by three years' supervised release after pleading guilty to conspiracy to possess with intent to distribute a controlled substance (18 U.S.C. §§ 2, 841(a)(1), 846) in the District of North Dakota.  See (Doc. Nos. 1 at 1; 1-3 at 1, 2, 4); Olson, ECF No. 208 at 1–2, 4.  Olson was ordered to receive credit for time served.  See (Doc. No. 1-3 at 2); Olson, ECF No. 208 at 2.

The sentencing court allowed Olson to be released from custody on bond after his sentencing, and Olson was ultimately ordered to self-surrender to the BOP by no later than 2 p.m. on February 15, 2017.  See id., ECF Nos. 210–13.  Olson voluntarily surrendered when he arrived at his designated BOP facility on February 15, 2017.  See (Doc. Nos. 9-2 ¶ 11; 9-13 at 2–3).  According to the BOP's inmate locator (https://www.bop.gov/inmateloc/), Olson has an anticipated release date of April 23, 2028.

3

### B.    Procedural History

Olson commenced the instant action by filing his Section 2241 petition, which the Clerk

of Court docketed on July 15, 2024.  (Doc. No. 1.)[2]  On August 15, 2024, the Court issued an

Order, which, inter alia, directed Respondent to file a response to Olson's habeas petition.  (Doc.

No. 4.)  After receiving an extension of time (Doc. Nos. 7, 8), Respondent timely filed his

response in opposition to Olson's habeas petition on October 1, 2024.  (Doc. No. 9.)  Olson then

timely filed a reply brief in further support of his petition on October 22, 2024.  (Doc. No. 10.)

Olson's petition is ripe for disposition.

### C.    The BOP's Administrative Remedy Program[3]

The Federal Bureau of Prisons ("BOP") has a multi-step administrative remedy program

allowing an inmate "to seek formal review of an issue relating to any aspect of [their]

confinement."  See 28 C.F.R. § 542.10(a).  First, an inmate should attempt informal resolution of

the issue with the appropriate staff member.  See id. § 542.13(b).  If informal resolution is

unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the

---

[2]  Although Olson neither remitted the filing fee nor sought leave to proceed in forma pauperis
when he filed his petition, see (Doc. No. 3), he later paid the fee.  See (Unnumbered Docket
Entry Between Doc. Nos. 3 & 4).  Additionally, Olson was incarcerated at United States
Penitentiary Lewisburg when he filed his petition, see (Doc. No. 1 at 1), and he is currently
incarcerated at Federal Correctional Institution Englewood in Littleton, Colorado.  See (Doc. No.
6).

[3]  To provide context to the Court's recitation of Olson's relevant administrative activity, the
Court will first set forth the BOP's procedures for a federal prisoner to exhaust their
administrative remedies.  The Court takes judicial notice of the BOP's Administrative Remedy
Program, which is available on the BOP's website at
https://www.bop.gov/policy/progstat/1330_018.pdf.  See, e.g., Baptiste v. Morris, No. 18-cv-
01484, 2020 WL 2745739, at *2 n.5 (M.D. Pa. May 27, 2020) (taking judicial notice of BOP's
Administrative Remedy Program).

warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a).  The warden is to respond to the request within twenty (20) calendar days.  See id. § 542.18.  An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response."  See id. § 542.15(a).  Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response."  See id.  The General Counsel's response to this appeal is due within twenty (20) calendar days; however, the time for a response may be extended by twenty (20) days.  See id. § 542.18.

### D.    Olson's Relevant Use of the ARP

On a form dated November 15, 2023, Olson submitted an Informal Resolution Attempt in which he sought clarification of the BOP's calculation of his sentence in light of the District of North Dakota's judgment stating he was to receive credit for time served.  See (Doc. No. 1-1 at 1).  Olson received an Informal Resolution Response dated November 20, 2023, which stated:

> In your informal resolution request, you claim your jail credit is not accurate.  You were credited for time from 8/13/2014–9/10/2014.  From 09/11/2014–08/06/2015 you were serving out your state parole violation.  You were ordered to complete your state time on Case # 18-08-K-2289.  Your fed time started again on 08/07/2015 until 01/23/2017.  The time then again started on your voluntary surrender date of 02/13/2017.  All your applicable jail credit was applied to your federal sentence.

See (id. at 2).

Following this informal response, Olson filed a formal Request for Administrative Remedy via a form dated November 28, 2023.  See (id. at 3).  Olson described his request as follows:

> Im [sic] trying to get someone to take a closer look at my sentence computation regarding my jail time credits.  My Judgment [sic] and Committ [sic], and sentencing transcript state [sic] by my Judge that he gave me credit for jail time

5

served.  He doesnt [sic] specify federal time, or state time.  He doesnt [sic] state any start or stop dates.  My computation paper states credit on my arrest date which isnt [sic] Federal [sic].  My Parole [sic] was violated 8/15/2014 and wasnt [sic] paroled until 8/7/2015.  But Im [sic] getting credit from 8/13/2014 until 9/10/2014.  Not Federal [sic].  Ive [sic] gotten a response from BP-8 which Ive [sic] attached, and Im [sic] not satisfied.  I apologize for this inconvenience but I feel strongly about this.  If you can take a look at this please do.  Thank you for your time.

See (id.).

Olson received an Administrative Remedy Response dated December 8, 2023 from the

warden, which denied his request for administrative relief.  See (id. at 4).  In denying relief, the

warden explained:

This is in response to your request for Administrative Remedy received on December 4, 2023, wherein you request jail credit applied to your federal sentence.

You received federal jail credit from August 13, 2014, until September 10, 2014.  This period of credit was for the arrest in Case Number 18-2014-CR-1652 which was dismissed.  You were transferred to the ND DOC on parole violations on September 11, 2014.  From September 11, 2014, until August 6, 2015, you were serving out your state parole violations in which you were ordered to complete your remaining state time.  This jail credit was applied to your state sentence.  You were paroled to the USMS on August 6, 2015.  Your federal jail credit started again on August 7, 2015, until your sentencing date of January 23, 2017, when you were released with a voluntary surrender date.  Your federal credit again began on your voluntary surrender date of February 13, 2017.

In view of the above, there is no basis for relief and your Request for Administrative Remedy has been denied.

See (id.).

Olson appealed from the warden's decision to the BOP Regional Director via a form dated

December 17, 2023.  See (id. at 5).  He described his reasons for his appeal as follows:

Im [sic] appealing the response I got on Admin. Remedy No. 1183048-F.  My District Court Judge clearly gives me credit for jail time served.  He doesnt [sic] specify any start and stop dates.  He doesnt [sic] specify Federal [sic] or state.  My Parole [sic] was revoked [sic] 8/15/14 two days after arrest.  Im [sic] getting credit now for 8/13/14 to 9/10/14 technically during Parole [sic] Revocation [sic].  I was in Jail [sic] 8/13/2014 to 1/23/2017.  The Judge gave me Credit [sic] and Im [sic]

6

asking for it.  My Judgement [sic] and Committal [sic] Papers [sic] clearly state this.  Thank you for your time and consideration regarding this.

See (id.).

The Regional Director denied Olson's appeal via a written decision dated February 26, 2024.  See (id. at 6–7).  In denying the appeal, the Regional Director explained that:

You appeal the response of the Warden of USP Lewisburg.  You allege your sentence computation is incorrect due to your prior custody credit (jail credit) being improperly calculated.  You indicate that you spent time in official detention for which you have not received credit.  You request to be awarded jail credit for all time spent in state and federal custody starting on August 13, 2014, the date of your arrest by North Dakota state authorities for related state charges.

A review of your appeal reveals the Warden adequately addressed your complaint.  18 U.S.C. §[]3585(b)(2) states, "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed, that has not been credited against another sentence."  You were originally arrested by North Dakota state authorities on August 13, 2014, for drug related charges.  These charges were later dismissed.  Prior to their dismissal, you were transferred to the custody of the North Dakota Department of Corrections on September 11, 2014, for multiple parole violations.  You were ordered to serve the remaining balance of your state sentence.

You were paroled to the United States Marshals Service (USMS) on August 6, 2015, pursuant to the detainer lodged against you for your instant federal offense.  You remained in the custody of the USMS until you were sentenced federally on January 23, 2017, at which time you were released on bond until you voluntarily surrendered on February 13, 2017.  You were awarded jail credit towards your federal sentence for the time spent in state custody from August 13, 2014, to September 10, 2014, which had not been credited against another sentence as your original state charges were dismissed.  You were not awarded jail credit towards your federal sentence from September 11, 2014, to August 6, 2015, as this time was credited against your state parole violation sentences.  You were awarded jail credit towards your federal sentence from the [sic] August 7, 2015, when you were paroled to the USMS detainer, to January 23, 2017, your federal sentencing date.  Your computation began on February 13, 2017, the date of your voluntary surrender.  Your sentence computation is correct.  Accordingly, your request is denied.

See (id.).

## II.     LEGAL STANDARDS

### A.     Section 2241 Habeas Petitions

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence."  See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas").  While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out."  See Woodall, 432 F.3d at 242, 243 (citation omitted).  As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

### B.     Exhaustion of Administrative Remedies Under Section 2241

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  See id. at

761–62 (citations omitted)).  Exhaustion is not required when it would not promote these goals.

See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not

be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and

internal quotation marks omitted)).  "For example, exhaustion may be excused where it 'would

be futile, if the actions of the agency clearly and unambiguously violate statutory or

constitutional rights, or if the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm.'"  Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019)

(unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

## III.    DISCUSSION

### A.    The Parties' Arguments

Olson contends that the BOP is incorrectly calculating his credit for time served, which

the District of North Dakota directed that he receive as part of his sentence.  See (Doc. No. 1 at

6).  He requests that the Court order the BOP to give him credit for the time he spent in state

custody from September 11, 2014, through August 6, 2015.  See (id. at 7).

Respondent argues that the Court should dismiss Olson's petition because he did not fully

exhaust his administrative remedies.  See (Doc. No. 9 at 5–7).  Respondent supplied, through the

Declaration of Kristen Lopez, a Management Analyst for the BOP who has worked in the area of

inmate sentence computations since December 2013, a summarized account of every grievance

Olson filed since his federal incarceration began.  See (Doc. Nos. 9-2 ¶¶ 4–6; 9-3 at 2–8).  Ms.

Lopez also states in her declaration that:

> [] Upon receipt of an inmate request or appeal, a BOP employee acting as an
> Administrative Remedy Clerk shall stamp the form with the date it was received,
> and log the information in the BOP computer program SENTRY.  See BOP Program
> Statement 1330.18, Administrative Remedy Program, p. 9, ¶ 13(a), available at:
> https://www.bop.gov/policy/progstat/1330_018.pdf.  If the complaint is an initial
> filing, it receives a unique Remedy ID Number upon initial entry, which follows

9

the complaint through the appeal process. Each Remedy ID Number also contains an extension that identifies the level of review. The extension "F" indicates the complaint was a BP-9 filed at the institution level. The extension "R" indicates the complaint or appeal was a BP-10 filed at the regional level. The extension "A" indicates the appeal was a BP-11 filed at the national level. All submissions received by the Administrative Remedy Clerk, whether accepted or rejected, are entered into SENTRY. See BOP Program Statement 1330.18, p. 9, ¶ 13(a).

A review of Petitioner's Administrative Remedy Generalized Retrieval reflects he filed administrative remedies related to his sentence computation only at the institution and regional levels (Administrative Remedy Nos. 1183048-F1 and 1183048-R1). See Attachment A, p. 7. Petitioner failed to ever appeal the Region's denial to Central Office. See generally id. Indeed, the only Central Office administrative remedy appeal that Petitioner has filed while in BOP custody related to a Discipline Hearing Officer ("DHO") appeal. See id., p. 4 (Administrative Remedy No. 1051641-A1). Therefore, he has not exhausted his sentence computation argument.

See Doc. No. 9-2 ¶¶ 5–6). Attached to Ms. Lopez's declaration is a copy of Olson's

Administrative Remedy Generalized Retrieval, which indicates that he did not file a final appeal

relating to his sentencing-calculation claim to the BOP's Central Office. See (Doc. No. 9-3 at 2–

8).

Alternatively, Respondent argues that even if the Court were to determine that Olson

fully exhausted his administrative remedies, the Court should deny the petition because the BOP

properly calculated his federal sentence. See (Doc. No. 9 at 7–11). Respondent asserts that this

Court lacks authority to credit time towards a sentence because this authority resides solely with

the BOP. See (id. at 9–10 (citing Blood v. Bledsoe, 648 F.3d 203, 206 (3d Cir. 2011))). He also

asserts that pursuant to 18 U.S.C. § 3585(b), the BOP cannot credit Olson for the time he spent in

state custody for his parole violation because he already received credit for it as part of his parole

sentence. See (id. at 8–11).

In his reply brief, Olson contests Respondent's assertion that he failed to fully exhaust his

administrative remedies. See (Doc. No. 10 at 1). He claims that he sent a BP-11 appeal form to

10

the Central Office on March 13, 2024, and he "certified the envelope." See (id.)  He then waited until August 2024 to file his habeas petition in this case because he was waiting for a response from the Central Office that he never received.  See (id.).  He states that his "hands are tied when making sure that [his] mail leaves an institution."  See (id.).

As for the merits of his petition, he contends that he was arrested on August 13, 2014 for multiple drug-related charges that were related to his federal indictment.  See (id. at 1–2).  He claims that "[a]s a 'tactical' play the State of North Dakota decided to dismiss there [sic] charges once they saw [his] intent to go [sic] Jury [sic] Trial [sic] to pursue an illegal search and seizure." See (id. at 2).  He believes that if his state charges are relevant to his federal charge, then he should earn credit for the time he was incarcerated since his arrest on the state charges.  See (id.). As such, the BOP should credit him for his time served from August 13, 2014, through January 23, 2017, and it should commence again when he self-surrendered on February 15, 2017.  See (id.).

B.    Analysis

After reviewing the parties' submissions, the Court will dismiss Olson's Section 2241 habeas petition because he failed to fully exhaust his administrative remedies.  As the petitioner, Olson has the burden to show he fully exhausted administrative remedies before bringing his Section 2241 petition.  See Meyers v. Martinez, 427 F. App'x 125, 127 (3d Cir. 2011) (unpublished) ("It was Meyers' burden to prove that he exhausted his administrative remedies— here, completion of the BOP's multi-tier Administrative Remedy Program—and he failed to do so." (internal citation omitted)); Thompson v. Ricci, 326 F. App'x 116, 118 n.4 (3d Cir. 2009) (unpublished) ("Thompson of course has the burden of demonstrating exhaustion of his administrative remedies before proceeding under § 2241." (citations omitted)); see also Davis v.

11

Pa. Dep't of Corr., No. 15-cv-00587, 2016 WL 7131565, at *3 (W.D. Pa. Dec. 6, 2016) ("In contrast to civil rights actions and the [PLRA], where exhaustion is an affirmative defense, and non-exhaustion is to be proven by the defendants, in habeas petitions, exhaustion is a condition precedent to filing with the consequent burden of proving exhaustion on the habeas petitioner." (internal citation omitted)).  He has not met this burden here because he did not state in his habeas petition that he filed an appeal to the Central Office; rather, he identifies his actions only up to the date of the Regional Director's response to his appeal.  See (Doc. No. 1 at 2–3).  Moreover, unlike with his Informal Remedy Request, formal Administrative Remedy Request, and appeal to the Regional Director, he has not supplied the Court with any proof that he sent his appeal to the Central Office even though he represents that he "certified the envelope."  See (Doc. No. 10 at 1).

On the other hand, Respondent has introduced Ms. Lopez's declaration, made under penalty of perjury, in which she represents that the BOP's records did not show that Olson ever filed an appeal to the Central Office.  See (Doc. No. 9-2 ¶¶ 5–6).  She also submitted a copy of Olson's Administrative Remedy Generalized Retrieval, which does not indicate that Olson appealed to the Central Office.  See (Doc. No. 9-3 at 2–8).  Overall, although the Court recognizes that issues can arise in any prison's mail system, Olson has not met his burden to show he fully exhausted his sentencing-calculation claim with the BOP.  Accordingly, the Court will dismiss his Section 2241 habeas petition due to his failure to exhaust.

The Court notes that even if the Court addressed Olson's sentencing-calculation on its merits, it would deny the claim.  "In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence."  Goodman, 427 F. App'x at 82 (citing 18 U.S.C. § 3585).  A federal

sentence "commences when the defendant is received by the Attorney General for service of [their] federal sentence." See Rashid v. Quintana, 372 F. App'x 260, 262–63 (3d Cir. 2010) (unpublished) (citing 18 U.S.C. § 3585(a)).  "As a result, a federal sentence cannot begin to run earlier than on the date on which it is imposed."  Id.; see also Taylor v. Holt, 309 F. App'x 591, 592–93 (3d Cir. 2009) (unpublished).  Stated differently, "the earliest possible date a federal sentence may commence is the date it was imposed."  See Pitts v. Spaulding, No. 15-cv-00644, 2015 WL 8482041, at *4 (M.D. Pa. Dec. 10, 2015) (internal quotation marks omitted).

With those principles in mind, the BOP could not commence Olson's federal sentence at any point earlier than January 23, 2017, the date of his sentencing.  See Rashid, 372 F. App'x at 262;  see also Proctor v. Finley, No. 19-630, 2020 WL 618621, at *3 (M.D. Pa. Feb. 10, 2020) ("A federal sentence cannot commence earlier than the date on which it was imposed." (citing Rashid, 372 F. App'x at 262)).  Moreover, Olson's sentence could not have commenced in this case until February 15, 2017, when he self-surrendered to the BOP.

As for the time Olson spent in state custody in North Dakota from the date of his parole violation, September 11, 2014, until his parole on August 6, 2015, regardless of the lack of specificity in his sentencing order about the credit for time served to which he was entitled, the District of North Dakota could not have directed the BOP to credit him for this period.  "District courts have no authority to credit time toward a sentence under [18 U.S.C.] § 3585(b)—that function rests in the sole authority of the BOP."  Blood v. Bledsoe, 648 F.3d 203, 206 (3d Cir. 2011) (citing United States v. Wilson, 503 U.S. 329, 333–35 (1992)).  Furthermore, a federal defendant gets "credit towards the service of a term of imprisonment for any time [they have] served in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the

13

sentence as imposed[,] that has not been credited against another sentence." See 18 U.S.C. § 3585(b).

Olson fails to show that he did not receive credit for his time incarcerated in North Dakota following his parole violation toward his sentence imposed for violation. He cannot obtain double credit for the time he spent incarcerated on his parole violation. See 18 U.S.C. § 3585(b); Wilson, 503 U.S. at 337 (explaining that by enacting Section 3585(b), "Congress made it clear that a defendant could not receive a double credit for [their] detention time"). Therefore, the BOP may not grant prior custody credit under Section 3585(b) for time that has been credited against another sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007). Accordingly, even if Olson had fully exhausted his administrative remedies, the Court would deny his petition because the BOP has properly calculated his federal sentence. See, e.g. Brown v. United States, No. 23-cv-00247, 2025 WL 2146724, at *3 (W.D. Pa. July 29, 2025) ("Petitioner received credit against his state parole sentence for the time that he spent in state custody between his arrest on August 17, 2012, and his release to federal authorities on June 11, 2014. Because he received credit against his state sentence for that time, the BOP appropriately and correctly determined that he was not entitled to a credit against his federal sentence under § 3585(b).").

IV.    CONCLUSION

For the reasons stated above, the Court will dismiss Olson's Section 2241 habeas petition and direct the Clerk of Court to close this case.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

14